UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PERRY PENDELL,

                                              Plaintiff,

v.                                                                 1:18-cv-0352 (GTS/TWD)

UNITED STATES SECRET SERVICE and
KIM CAMPBELL,

                                              Defendants.
_____

APPEARANCES:

PERRY PENDELL
Plaintiff, *pro se*
14A3835
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for initial review a *pro se* complaint filed by Plaintiff Perry Pendell, an inmate in custody of the New York State Department of Corrections and Supervision ("DOCCS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), against Defendants United States Secret Service ("USSS") and Kim Campbell, Special Agent in Charge ("SAIC"). (Dkt. No. 1.) Plaintiff, who has not paid the filing fee for this action, has filed an application for leave to proceed *in forma pauperis* ("IFP Application"), along with the required Inmate Authorization Form. (Dkt. Nos. 2, 3.) Also before the Court is Plaintiff's motion for appointment of counsel, along with a letter request filed April 4, 2018. (Dkt. Nos. 4, 6.)

**I.      IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application (Dkt. No. 2), along with the required Inmate Authorization Form (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP Application is granted.[1]

**II.     INITIAL SCREENING**

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Likewise, under § 1915A, a court must, as soon as practicable, *sua sponte* review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In performing this screening of the complaint, the court has the duty to show liberality towards *pro se* litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam).

---

[1] Plaintiff should note that although his IFP Application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

2

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.1983).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*. (citation omitted).

## III.   COMPLAINT

Generally, Plaintiff alleges Defendants (1) failed to reply to his FOIA request in a reasonable amount of time; (2) failed to reply to his administrative appeal in a timely manner; and (3) improperly withheld and refused to produce the document requested by Plaintiff. (Dkt. No. 1 at 12-15.[2]) Plaintiff seeks declaratory and injunctive relief, along with costs. *Id.* at 15-16.

As background for the complaint, Plaintiff was arrested on April 5, 2013, in Columbia County, New York by the Columbia County Sheriff's Office ("CCSO"). *Id*. at 4. On April 11, 2013, CCSO applied for and obtained a search warrant for electronic items and media storage devices that were seized from Plaintiff and for the records concerning a cellular telephone number. *Id*.; Dkt. No. 1-1 at 2-5. CCSO sought the assistance of USSS to perform the electronic analysis of the seized items. (Dkt. No. 1 at 4-5.) On April 17, 2013, CCSO delivered the seized electronics to USSS for analysis. *Id*. at 5. Thereafter, on April 18, 2013, CCSO sought and

---

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

obtained written permission to search the alleged victim's electronics by way of consent. *Id*.; Dkt. No. 1-1 at 13-14. USSS Special Agents Lupe and Leege searched and extracted information from the various electronic items and media storage devices. (Dkt. No. 1 at 6.) The information extracted by USSS was produced during discovery, some of which was presented during Plaintiff's public criminal trial. *Id*.

On June 25, 2014, Plaintiff was convicted in Columbia County of Rape in the Second Degree (two counts), Criminal Sexual Act in the Second Degree, Possessing a Sexual Performance of a Child, and Criminal Solicitation in the Second Degree. *Id*. at 7; Dkt. No. 1-1 at 26, 28; *see also* http://nysdoccslookup.doccs.ny.gov (DIN 14A3835) (last visited Apr. 6, 2018). Plaintiff was sentenced to twenty years and his earliest conditional release date is May 19, 2030. *See* http://nysdoccslookup.doccs.ny.gov (DIN 14A3835) (last visited Apr. 6, 2018).

In February of 2016, Plaintiff wrote to USSS pursuant to FOIA requesting information pertaining to any and all extraction reports performed on all phones, computers, and storage devices involved in the case of Perry Pendell. (Dkt. No. 1 at 7-9; *see also* Dkt. No. 1-1 at 31-48.) Plaintiff's FOIA request was assigned File Number 20160736, which was denied by SAIC Campbell as incomplete. (Dkt. No. 1-1 at 33-34.)

In May of 2016, Plaintiff responded with the "correct and proper" FOIA request. (Dkt. No. 1 at 8.) However, SAIC Campbell assigned Plaintiff's FOIA request a new File Number 20160979. (Dkt. No. 1-1 at 37.) Plaintiff and SAIC Campbell exchanged correspondence regarding the status of File Number 20160979. (Dkt. No. 1 at 7-9; Dkt. No. 1-1 at 36-48.) By letter dated August 3, 2017, Plaintiff's request was denied in its entirety pursuant to FOIA Exemption (b)(7)(A), which exempts "records or information compiled for law enforcement purposes . . . to the extent that the information . . . could reasonably be expected to interfere with

4

enforcement proceedings" from production under FOIA.  (Dkt. No. 1 at 10; Dkt. No. 1-1 at 50.)  *See also* 5 U.S.C. § 552(b)(7)(A).

Plaintiff appealed SAIC Campbell's decision to the next level of agency review.  (Dkt. No. 1 at 10-11; Dkt. No. 1-1 at 53-54.)  By letter dated January 28, 2018, Plaintiff's appeal was denied.  (Dkt. No. 1 at 10-11.)  In particular, it was "determined that the responsive documents should be withheld under Title 5 U.S. Code 552(b)(7)(A) as release of this information could interfere with an ongoing enforcement proceeding."  (Dkt. No. 1-1 at 56.)

Plaintiff now brings this action for federal judicial review of the agency's decision, claiming the exemption was "wrongly applied" because Plaintiff was sentenced on August 19, 2014, and, therefore, an enforcement proceeding is not "ongoing."  (Dkt. No. 1 at 10, 12-15.)  Plaintiff further contends Defendants failed to timely respond to his FOIA request and administrative appeal.  *Id*.  For a complete statement of Plaintiff's claims, reference is made to the complaint.

## IV.   DISCUSSION

FOIA grants federal district courts jurisdiction to enjoin an agency from withholding agency records that have been improperly withheld from the plaintiff.  5 U.S.C. § 552(a)(4)(B).  "Agency" has been defined as "any executive department . . . or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  *Id*. § 552(f).  Thus, this statute only authorizes FOIA claims against agencies, not individuals.  *Tomscha v. Giorgianni*, No. 03 Civ. 6788, 2004 WL 1234043, at *3 (S.D.N.Y. June 3, 2004)[3]; *see also Mancuso v. U.S. E.P.A.*, No. 5:12-cv-1027 (LEK/TWD),

---

[3]  The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

5

2012 WL 6765360, at *4 (N.D.N.Y. Nov. 5, 2012) ("Individual federal officials are not proper defendants in a FOIA action because it is the *agency's* responsibility to produce records.") (quoting *Jefferson v. Reno*, 123 F. Supp. 2d 1, 3 (D.D.C. 2000)) (emphasis in original).

Here, although Plaintiff has properly brought this action under FOIA, he has improperly named SAIC Campbell as a Defendant. The only proper Defendant in this action is USSS, the agency that allegedly failed to timely respond and withheld the documents that Plaintiff seeks. Therefore, the Court recommends (1) dismissing Plaintiff's claims against SAIC Campbell without leave to amend and (2) allowing the action to proceed against USSS. In so recommending, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

## V.   MOTION FOR COUNSEL

Plaintiff moves for the appointment of counsel. (Dkt. No. 4.) Plaintiff's application indicates that he has been unsuccessful in his efforts to obtain counsel on his own. *Id.*; *see also* Dkt. No. 6. Thus, this Court may properly consider Plaintiff's motion. For the reasons discussed below, Plaintiff's request is denied without prejudice.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

6

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

For purposes of this application, the Court will assume, without deciding, the case may be of substance. A review of the file in this matter reveals that the issues in dispute are not overly complex. It appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action.

While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. Furthermore, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference* if this case survives any dispositive motions filed by the remaining Defendant. Finally, the Court is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation.

Therefore, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate that, in light of *specific* changed circumstances, consideration of the above factors warrants granting the application.

## VI.    LETTER MOTION

The Court has reviewed Plaintiff's letter motion filed April 4, 2018. (Dkt. No. 6.) Every civil action is assigned a case number by the Clerk's Office, which includes the initials of

7

the district judge and the magistrate judge assigned to the case. This action has been assigned case number 1:18-cv-00352 (GTS/TWD).[4] Plaintiff should include the case number on all future filings with the Court.

Insofar as Plaintiff's letter is submitted in support of his motion for appointment of counsel (Dkt. No. 6), the motion is denied as moot. As set forth above, Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate that, in light of *specific* changed circumstances, consideration of the above factors warrants granting the application.

## VII.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that this action be dismissed as against individual Defendant Kim Campbell; and it is further

**RECOMMENDED** that if the District Court adopts this Report-Recommendation, the Clerk shall issue a summons and forward it, along with a copy of the complaint containing General Order 25, which sets for the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon Defendant USSS; and it is further

**RECOMMENDED** that a formal response to Plaintiff's complaint be filed by Defendant USSS as provided for in the Federal Rules of Civil Procedure subsequent to service of process on Defendant; and it is further

---

[4] For Plaintiff's reference, "GTS" refers to Glenn T. Suddaby, Chief United States District Judge, and "TWD" refers to Thérèse Wiley Dancks, United States Magistrate Judge.

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff's April 4, 2018, letter motion (Dkt. No. 6) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation and General Order 25, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the

---

[5] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve

9

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: April 9, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2004 WL 1234043
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Larry TOMSCHA, Plaintiff,
v.
Joseph GIORGIANNI, of General Services Administration, Defendant.

No. 03 Civ.6755(DLC).
|
June 3, 2004.

**Attorneys and Law Firms**

Larry Tomscha, New York, New York, for the Plaintiff, pro se.

Lawrence H. Fogelman, Assistant United States Attorney, United States Attorney's Office for the Southern District of New York, New York, New York, for the Defendant.

**Opinion**

*OPINION AND ORDER*

COTE, J.

**\*1** On September 5, 2003, *pro se* plaintiff Larry Tomscha ("Tomscha") filed this action against Joseph Giorgianni ("Giorgianni") of the General Services Administration ("GSA" or the "agency"), alleging that the GSA failed to comply with the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, by refusing to disclose the underlying justifications for the grant of cash awards made to a fellow GSA employee from 1996 through 2002, and for redacting the amount of one particular award made to that employee. The GSA now moves to substitute itself as the named defendant, and for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons stated below, the motion is granted.

*Background*
The following facts are taken from evidence submitted by the parties in connection with this motion. On January 31, 2003, Tomscha, employed by the GSA as a contract specialist, made a FOIA request to the Regional FOIA Officer of GSA's Region 2. Tomscha's request stated, "Please provide me with the cash award amounts, and the reasons for those amounts given to employee David McDonald [ ("McDonald") ] for the years 1996 though 2002." Tomscha claims that McDonald received an average of $6,000 per year in awards over a six-year period, while during the same time period Tomscha received in total approximately $150, and the "regular working employee" received an average total award of $1,000-4,000 in cash.

1   Tomscha sent an almost identical request to the Regional FOIA Officer of GSA's Region 6. Tomscha's second request was forwarded to Region 2, and the agency treated both requests as a single request. The two requests are referred to collectively as the "FOIA request.

Jeremy Boozikee ("Boozikee"), a Human Resources Specialist for the GSA, conducted a search in response to Tomscha's FOIA request. The search encompassed the following sources: (1) GSA's Comprehensive Human Resources Information System ("CHRIS") Database, which contains employment-related data for Region 2 GSA employees. The CHRIS Database stores information relating to the gross dollar amount of awards received by employees, but not the justifications for the awards; (2) a GSA National Payroll Center ("Payroll Center") database located in Region 6, which maintains award information issued to individual employees, including McDonald; and (3) each authorizing official for McDonald's cash awards. Boozikee sent e-mail messages to the authorizing officials asking for copies of their justification for each of McDonald's awards.

The information obtained from these sources included: (i) a list from the CHRIS Database of 42 awards provided to McDonald, with information about the date, type and amount of these awards; and (ii) a report from the Payroll Center that included information concerning 38 awards provided to McDonald. All but an award dated April 25, 2000, appeared on the CHRIS Database list. Seven of the awards listed on the Payroll Center report also included information concerning the justification for the award. Authorizing officials for five of the awards to McDonald also provided their justifications.

In a letter to Tomscha dated April 1, GSA attached a copy of the computer printout from the CHRIS Database. The list provided the dates and gross cash amounts of 41

awards received by McDonald from 1996 through 2002, and provided the date but redacted the amount of a June 26, 1996 Performance Award ("Performance Award") included on the list.[2] The GSA did not provide a copy of the Payroll Center report with its April 1 letter.

[2] Performance Awards have been discontinued by GSA. This type of award reflected an employee's annual performance rating. For example, employees who received an annual performance rating of "outstanding" in 1996 would receive a Performance Award of a particular percentage of their base salary, and employees who received a rating of "highly successful" would receive a Performance Award of a different, lower, percentage. In contrast, the other awards do not correlate with employee annual performance ratings, and instead are based on an employee's specific accomplishments.

**\*2** The April 1 letter also informed Tomscha that it had found several award justifications, but that the agency was withholding such documents based on the FOIA exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). The GSA represented that disclosure of the award justifications would constitute an invasion of McDonald's privacy that was not outweighed by any public interest. The GSA applied the same rationale to withholding the amount of the Performance Award, reasoning that the award amount could allow a "mathematical linkage" to McDonald's performance appraisal.

The GSA subsequently discovered that the April 25, 2000 award referenced in the Payroll Center report was not included on the CHRIS Database list. In a letter dated February 26, the agency supplemented its previous response to Tomscha's FOIA request by producing the Payroll Center report, but redacting the award justifications as well as other non-responsive information contained in the report. The GSA again cited the strength of McDonald's privacy interest.

Since its responses to Tomscha's request, GSA has received additional documentation providing justifications for six awards received by McDonald between 1996 and 2002. The agency has determined that any public interest in the disclosure of these award justifications is outweighed by McDonald's privacy interest in the information.

On April 11, Tomscha appealed to GSA's FOIA Office the April 1 determination not to provide justifications for the McDonald awards. Tomscha attached to his appeal a GSA instructional letter, OAD IL-97-1, dated January 16, 1997 ("Instructional Letter"). The Instructional Letter states, in pertinent part,

Managers and supervisors must make every effort to ensure that awards are given in an equitable manner. Some ways to accomplish this include:

[ ... ]

(c) *Widely publicizing who receives awards and why awards are given.* This will provide employees with needed information regarding what kind of performance is valued, and thus rewarded, in an organization. Awards that are given without publicity may be perceived by employees as resulting from a process that is inherently unfair...."

(Emphasis supplied.) Tomscha's appeal was denied in a letter dated May 19. The panel upheld the agency's determination that the award justifications, as well as the cash amount of the Performance Award, were exempted from disclosure under Exemption 6 to the FOIA. With respect to the Performance Award, GSA stated that McDonald "has a personal privacy interest in his performance appraisal, which the performance amount reflects, and there is no public interest to be served by disclosure that outweighs the personal privacy interest in non-disclosure." The GSA also explained that the provision of the Instructional Letter upon which Tomscha relied

> **\*3** is merely a suggested tool for improving the GSA awards program and gives a manager or supervisor the option of publicizing such information. Should a manager or supervisor exercise this option, however, information that would reveal the performance appraisal or justification upon which the award is based should not be released. This is to protect the privacy interest of employees.

The GSA now moves to dismiss Giorgianni from this action, to substitute GSA as a named defendant, and for summary judgment. In his opposition, Tomscha raises for the first time allegations that GSA has mismanaged its awards program.[3] In reply to Tomscha's opposition, GSA submits additional declarations by Ronald L. Davis, another Human Resource Specialist with the GSA, and Michael S. Melloy, an accountant for the Payroll Center.

[3]  On March 26, Tomscha submitted a Notice of Motion for an order granting summary judgment to the defendant. It appears that this motion is mislabeled, and the Tomscha is opposing GSA's motion for summary judgment. Also on March 26, Tomscha served a Factual Verification Statement, a Memorandum of Law and an appendix of exhibits. On April 2, Tomscha submitted an Affidavit in opposition to GSA's motion, a second appendix of exhibits, and a second memorandum of law. These documents are collectively referred to as Tomscha's opposition.

*Discussion*

I. *Substitution of the GSA as a Named Defendant*
FOIA grants district courts "jurisdiction to enjoin the agency from withholding agency records improperly withheld from complainant ." 5 U.S.C. § 552(a)(4)(B). The term "agency" is defined to include "any executive department ... or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). This statute only authorizes FOIA claims against agencies, not individuals. *See, e.g., Webb v. Ashburn,* No. 96 Civ. 325(SAS), 1997 WL 118355, at *5 (S.D.N.Y. Mar. 17, 1997); *Williams v. McCausland,* 791 F.Supp. 992, 1001 (S.D.N.Y.1992). Accordingly, GSA's motion to dismiss Giorgianni from this action and to substitute GSA as the named defendant is granted.

II. *The FOIA Claim*
The agency's response to a FOIA request is subject to *de novo* judicial review. See 5 U.S.C. § 552(a)(4)(B). To prevail on a motion for summary judgment in a FOIA case, the defending agency bears the burden of showing that "its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. Department of Justice,* 19 F.3d 807, 812 (2d Cir.1994). Affidavits or declarations showing that the agency has conducted a "thorough search" for the requested records, and "giving reasonably detailed explanations" for why withheld documents fall within the particular exemption are sufficient to sustain the agency's burden. *Id.; see also Grand Central Partnership, Inc. v. Cuomo,* 166 F.3d 473, 488-89 (2d Cir.1999). Affidavits submitted by an agency are "accorded a presumption of good faith." *Grand Central,* 166 F.3d at 489 (citation omitted).

FOIA adopts a policy that "strongly" favors disclosure of information in the possession of the federal government. *Halpern v. Federal Bureau of Investigation,* 181 F.3d 279, 286 (2d Cir.1999). In recognition that FOIA's policy of disclosure may at times conflict with other policies, the Act exempts nine categories of documents from its disclosure provisions. Any information "falling within the terms of these exemptions need not be disclosed." *Id.* at 287. The exemptions are to be "narrowly construed with doubts resolved in favor of disclosure." *Id.* (citation omitted). *See also Tigue v. United States Dep't of Justice,* 312 F.3d 70, 76 (2d Cir.2002).

*4 Exemption 6, the FOIA exemption at issue here, provides that the Act's disclosure requirements do not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U .S.C. § 552(b)(6). The primary purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599 (1982). Courts must determine whether the release of the information would "constitute a clearly unwarranted invasion of that person's privacy." *Id.* at 602.

To prevail on an Exemption 6 claim, the Government must demonstrate that the subject documents come from the type of files that are statutorily protected, and that, on balance, the individual's right of privacy outweighs "the basic policy of opening agency action to the light of public scrutiny." *United States Dep't of State v. Ray,* 502 U.S. 164, 175 (1991) (citation omitted); *see also Federal Labor Relations Authority v. United States Dep't of Veterans Affairs,* 958 F.2d 503, 505 (2d Cir.1992). The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would

serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *United States Dep't of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 495 (1994) (citation omitted).

The GSA has shown through Boozikee's affidavit that it conducted a thorough search in response to Tomscha's FOIA request.[4] Indeed, Tomscha did not challenge the adequacy of the agency's search in his administrative appeal to GSA's FOIA Office, and does not question the thoroughness now. Accordingly, the only real inquiry in this case is whether the redacted documents fall within Exemption 6.

[4] The declarations submitted in conjunction with GSA's reply to Tomscha's opposition will not be considered as Tomscha did not have an opportunity to respond to them.

As a threshold matter, the justifications underlying McDonald's awards, and the amount of the Performance award, qualify as either "personnel" or "similar" files under the exemption. The withheld information constitutes part of McDonald's personnel records, since the awards directly relate to his employment. Even if the documentation at issue were deemed to fall outside the definition of personnel files, it still would be considered a "similar file" under Exemption 6. The Supreme Court has interpreted the phrase "similar files" broadly to include "detailed Government records on an individual which can be identified as applying to that individual." *Washington Post,* 456 U.S. at 602 (citation omitted).

The central inquiry in this case therefore turns on whether production of the files would clearly invade McDonald's privacy, and on whether the privacy interests identified by GSA outweigh the public's interest in disclosure. The withheld documents in this case implicate the privacy interests of McDonald, GSA's managers, and the agency itself. McDonald, like any employee, has a strong interest in keeping private the details of his job performance. Tomscha's observation that McDonald's evaluations must be positive given the amount of the awards does not reduce the strength of that privacy interest. Both favorable and unfavorable assessments trigger a privacy interest. *See Federal Labor Relations Authority v. United States Dep't of Commerce,* 962 F.2d 1055, 1059 (D.C.Cir.1992) (employees receiving ratings of "outstanding" or "commendable" have a substantial interest in maintaining privacy and the fact that the information is favorable does not diminish the interest); *Ripskis v. Dep't of Housing and Urban Development,* 746 F.2d 1, 3 (D.C.Cir.1984) (the release of favorable information could "spur unhealthy comparisons among HUD employees and thus breed discord in the workplace").

**\*5** In addition to McDonald, the managers who nominated him and the authorizing officials who approved awards to him also have an interest in maintaining the confidentiality of their evaluations. Similarly, GSA has an interest in encouraging managers and supervisors to comment candidly on an employee without fear that their statements will become public. "Human experience teaches us that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon,* 418 U.S. 683, 705 (1974).

Balanced against these private interests is the public's interest in monitoring government agencies' use of tax dollars to distribute cash awards to its employees. The public has an interest in ensuring that the awards are fairly distributed, and that agencies properly adhere to their stated guidelines in distributing the awards. *See Hopkins v. Dep't of Housing and Urban Development,* 929 F.2d 81, 88 (2d Cir.1991) (monitoring of governmental operations accepted as a public interest). Other agency employees such as Tomscha may also have an interest in promoting the transparency of the awards program in order to increase employee confidence in their supervisors and to better understand the type of work performance that results in awards. GSA itself cited just such a rationale when it encouraged managers through its Instructional Letter to publicize award amounts and their justifications.

On balance, however, the interest of McDonald, his supervisors, and GSA in maintaining the confidentiality of McDonald's employment evaluations is substantial and outweighs the public's interest in knowing the justification for the awards. The disclosure of the documents sought by Tomscha would not contribute significantly to the public's understanding of the activities of its government. In contrast, such disclosure would impact directly on McDonald's privacy interest in the details of his job performance. *See Williams v. McCausland,* No. 90 Civ.

7563(RWS), 1994 WL 18510, at *14 (S.D.N.Y. Jan. 18, 1994).

In sum, GSA has shown that it conducted a thorough search for the requested information, and has provided a reasonable explanation for withholding certain documents from Tomscha by showing that they fall under Exemption 6 of the FOIA. Accordingly, GSA's motion for summary judgment is granted.

III. *GSA's Management of the Fast Track Awards*
Read liberally, Tomscha's opposition to this motion raises for the first time a challenge against GSA for improperly managing and distributing its cash awards program.[5] These allegations, which are not pleaded in the complaint, go beyond the subject matter of Tomscha's FOIA claim against the agency. To the extent that Tomscha's opposition is an attempt to amend his complaint, that effort must be denied.

[5] For example, Tomscha asserts in his opposition that the "Awards Program has been plagued with questionable awards, insufficient documentation and poor management skills."

Tomscha's allegations fail to satisfy an essential predicate for suing the United States or one of its entities, to wit, an independent basis for subject matter jurisdiction and a waiver of sovereign immunity. *See Adeleke v. United States,* 355 F.3d 144, 152 (2d Cir.2004); *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999). Limitations imposed by the waiver statute "are to be strictly applied against the claimant ." *Adeleke,* 355 F.3d at 152 (2d Cir.2004) (citation omitted). Tomscha cites no statute providing a basis to sue GSA over the management of its discretionary awards program. In addition, Tomscha identifies no waiver of sovereign immunity that would permit a suit based on his new allegations.

*Conclusion*
**\*6** The defendant's motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendant and close the case.
SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1234043

2012 WL 6765360
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul MANCUSO, Plaintiff,
v.
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, Lisa Jackson,
Todd H. Gleason, Kevin Miller, Matthew W.
Morrison, Michael R. Fisher, Defendants.

No. 5:12–CV–1027 (LEK/TWD).
|
Nov. 5, 2012.

**Attorneys and Law Firms**

Paul Mancuso, Minersville, PA, pro se.

**Opinion**

*ORDER and REPORT–RECOMMENDATION*

THERÈSE WILEY DANCKS, United States Magistrate Judge.

*\*1* Presently before the Court are an amended *pro se* complaint, two applications to proceed *in forma pauperis,* a motion to appoint counsel, and a motion to appoint the United States Marshal to serve the summons and complaint filed by Plaintiff Paul Mancuso. (Dkt.Nos.2, 5, 7, 8, 10.) Generally, Plaintiff alleges that the United State Environmental Protection Agency ("EPA") wrongfully denied his Freedom of Information Act ("FOIA") requests. (Dkt. No. 7.) For the reasons discussed below, I grant Plaintiff's applications to proceed *in forma pauperis* (Dkt.Nos.2, 5), deny Plaintiff's motion to appoint counsel (Dkt. No. 8) without prejudice, deny Plaintiff's motion to appoint the United States Marshal to serve the summons and complaint as moot in light of this Order and ReportRecommendation, recommend that the Court dismiss the claims against the individual defendants without leave to amend, and recommend that the case proceed against the EPA.

**I. APPLICATION TO PROCEED *IN FORMA PAUPERIS***

Plaintiff has applied to proceed *in forma pauperis.* (Dkt.Nos.2, 5.) A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's *in forma pauperis* applications (Dkt. No. 2, 5), I find that Plaintiff meets this standard. Therefore, Plaintiff's applications to proceed *in forma pauperis* are granted.

**II. SCREENING OF THE COMPLAINT**

**A. Applicable Legal Standard**

28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In performing this screening of the complaint, the court has the duty to show liberality towards *pro se* litigants. *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam). "[E]xtreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond. *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983).

**B. Allegations of the Complaint**

Plaintiff alleges that he was the target of a criminal investigation by the EPA. (Dkt. No. 7 at 2.) That investigation led to a criminal proceeding against Plaintiff in this Court. *United States v. Mancuso,* No. 5:08 CR 0611 (FJS). Plaintiff has provided a declaration filed in the criminal case as an attachment to his complaint in this action. (Dkt. No. 7 1 at 1 4.) In that document, an EPA agent declared that

> Beginning in 2005, my office began investigating Paul, Steven, Lester, and Ronald Mancuso in connection with the illegal removal and disposal of regulated asbestos-containing materials ("RACM") as well as various ... offenses associated with those environmental crimes.

*\*2* As part of that investigation, my office accumulated a substantial volume of paperwork associated with the various shell companies that the aforementioned individuals set up .... [I]n reviewing their paperwork, we began noticing that certain handwriting appeared to

be very similar in size and style, yet would be ascribed to the names of different individuals on the face of the document i.e., the same handwriting appeared on multiple documents under different signatures.

In approximately September 2006, the United States requested that Paul, Steven, and Ronald Mancuso provide handwriting exemplars. They did so ....

Shortly after the exemplars were provided, the United States Attorney's Office for the Northern District of New York sent target letters to Paul, Steven, Lester, and Ronald Mancuso.

Thereafter, Ronald Mancuso attended a "proffer session" at the United States Attorney's Office for the Northern District of New York.

On August 28, 2008, Ronald Mancuso pled guilty to a one-count conspiracy ... and entered into a "plea and cooperation" agreement.

As part of his proffer and subsequent cooperation under his agreement, Ronald Mancuso readily identified the handwriting of Paul Mancuso. He stated that his basis for being able to identify Paul Mancuso's handwriting was that "he was his brother" and he had seen his handwriting "for years."

During subsequent phases of the investigation, additional witnesses ... were able to identify Paul and/or Steven Mancuso's handwriting based on prior familiarity therewith.

Based on these various witnesses' ability to identify Paul and/or Steven Mancuso's handwriting, my office and the United States Attorney's Office for the Northern District of New York determined that expert handwriting analysis was unnecessary. Accordingly, the handwriting exemplars provided by Paul, Steven, and Ronald Mancuso were never submitted for analysis.

(Dkt. No. 7 1 at 1 3.)

During the criminal proceeding, the prosecutor did not introduce the handwriting exemplars. *Id.* at 19, 21. Plaintiff and his co-defendants asserted that the prosecutor failed to provide them with the handwriting exemplars and/or analysis of the exemplars. *Id.* at 21, 25, 32. The prosecutor maintained that he was not required to turn over the information because the exemplars were never analyzed or used at trial. *Id.* at 23, 26. The prosecutor further maintained that Plaintiff's attorney had never requested a copy of the exemplars. *Id* at 23, 31.

A jury found Plaintiff guilty on October 28, 2009. *United States v. Mancuso,* Case No. 5:08 CR 0611, Dkt. No. 76. Plaintiff is currently serving his sentence at Schuylkill Federal Correctional Institution in Pennsylvania.

In 2011, Plaintiff began filing requests under the Freedom of Information Act ("FOIA") for various documents relating to his criminal prosecution. In his first request, Plaintiff requested the handwriting exemplars. (Dkt. No. 7 at 3.) Defendant Michael R. Fisher denied the request on September 21, 2011, pursuant to FOIA Exemption 7A. (Dkt. No. 7 at 3; Dkt. No. 7 1 at 5.) Exemption 7A exempts "records or information compiled for law enforcement purposes ... to the extent that the production of such ... records or information ... could reasonably be expected to interfere with enforcement proceedings" from production under FOIA. 5 U.S.C. § 552(b)(7)(A). The record does not indicate whether Plaintiff appealed Defendant Fisher's denial to the next level of agency review.

**\*3** In his second request, Plaintiff requested air monitoring reports. (Dkt. No. 7 at 3 4.) Defendant Fisher denied that request on November 22, 2011, pursuant to FOIA Exemption 7A. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 6.) Plaintiff appealed to the next level of agency review. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 8 9.) Defendant Fisher denied the appeal on February 15, 2012. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 10 11.)

In his third request, Plaintiff requested inspection reports. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 12.) Defendant Matthew W. Morrison denied the request pursuant to FOIA Exemption 7C on February 23, 2012. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 13 14.) Exemption 7C exempts "records or information compiled for law enforcement purposes ... to the extent that the production of such ... records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy" from production under FOIA. 5 U.S.C. § 552(b)(7)(C). Plaintiff appealed to the next level of agency review. (Dkt. No. 7 at 4; Dkt. No. 7 1 at 14 15.) Defendant Kevin Miller denied Plaintiff's appeal on April 25, 2012. (Dkt. No. 7 at 5; Dkt. No. 7 1 at 14.)

In his fourth request, Plaintiff again requested the exemplars. (Dkt. No. 7 at 5.) Defendant Morrison denied the request pursuant to FOIA Exemption 7E on March 1, 2012. (Dkt. No. 7 at 5; Dkt. No. 7 1 at 16.) Exemption 7E exempts "records or information compiled for law enforcement purposes ... to the extent that the production of such ... records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions ... if such disclosure could reasonably be expected to risk circumvention of the law" from production under FOIA. 5 U.S.C. § 552(b)(7)(E). Plaintiff appealed to the next level of agency review. (Dkt. No. 7 at 5; Dkt. No. 7 1 at 18.)

In his fifth request, Plaintiff again requested the exemplars. (Dkt. No. 7 at 5; Dkt. No. 7 1 at 17.) Defendant Morrison denied the request pursuant to FOIA Exemption 7E on April 18, 2012. (Dkt. No. 7 at 5.) Plaintiff appealed to the next level of agency review. (Dkt. No. 7 1 at 29.)

Defendant Miller denied Plaintiff's appeals regarding his fourth and fifth requests in a single letter dated May 30, 2012. (Dkt. No. 7 at 6; Dkt. No. 7 1 at 29 30.) Defendant Miller stated that the records were exempt from FOIA under Exemption 7E and that the information Plaintiff sought was not "segregable" from non-exempt information. (Dkt. No. 7 1 at 29 30.)

In this action, Plaintiff alleges that Defendants have wrongfully withheld the requested documents. (Dkt. No. 7 at 6.) Plaintiff alleges that Defendants' application of Exemptions 7A, 7C, and 7E was arbitrary, capricious, an abuse of discretion, and violated FOIA. *Id.* at 7. Plaintiff asserts that "[e]very FOIA request made by Plaintiff contains segregable information." *Id.* at 8.

Plaintiff requests that this Court order Defendants "to produce all records requested for in camera inspection by the Court to determine if tests were performed on handwriting exemplars and what segregable material is available for production under FOIA." *Id.* Plaintiff further requests that the Court order Defendants "immediately to disclose the requested records in their entireties and make copies available to the plaintiff." *Id.* Plaintiff also requests costs and fees. *Id.*

C. Analysis

*4 Plaintiff has named the EPA and five individuals as defendants in this action. (Dkt. No. 7 at 2 3.) Only the EPA is a proper defendant. Under 5 U.S.C. § 552(a)(4)(B), the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." An "agency" is "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). "Individual federal officials are not proper defendants in a FOIA action because it is the *agency's* responsibility to produce records." *Jefferson v. Reno,* 123 F.Supp.2d 1, 3 (D.D.C.2000) (emphasis in original). Therefore, I recommend that the Court dismiss the claims against Defendants Lisa Jackson, Todd H. Gleason, Kevin Miller, Matthew W. Morrison, and Michael R. Fisher without leave to amend. I recommend that the action proceed against the EPA.

III. PLAINTIFF'S MOTION FOR COUNSEL
Plaintiff moves for the appointment of counsel. (Dkt. No. 8.) For the reasons discussed below, Plaintiff's request is denied without prejudice.

First, Plaintiff has not demonstrated that he is unable to obtain counsel through the private sector or public interest firms. Therefore, the Court is not required to consider Plaintiff's request on the merits. *See Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 173 74 (2d Cir.1989) (per curiam) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). However, because Plaintiff is incarcerated and indigent, the Court will nonetheless address the merits of Plaintiff's request. *See Cooper,* 877 F.2d at 174 ("If the indigent plaintiff is a prison inmate or a homeless vagrant, he may have no effective means of bringing his claim to the attention of the lawyer marketplace to have its merits appraised.").

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. *Hodge,* 802 F.2d at 60 61. As a threshold matter, the court should ascertain whether the indigent's claims

seem likely to be of substance. *Id.* If so, the court should then consider

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in the case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge,* 802 F.2d at 61 62). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, "each case must be decided on its own facts." *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

**\*5** A review of the file in this matter reveals that the issue in dispute herein is not overly complex. Further, it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action. While it is possible that there will be conflicting evidence implicating the need for crossexamination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez,* 899 F.Supp. at 974. Furthermore, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference* if this case survives any dispositive motions filed by the remaining Defendant. Finally, this Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate that, in light of *specific* changed circumstances, consideration of the above factors warrants the granting of such an application.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's applications to proceed *in forma pauperis* (Dkt. Nos.2, 5) are **GRANTED;** and it is further

**RECOMMENDED** that the Court dismiss the claims against Defendants Lisa Jackson, Todd H. Gleason, Kevin Miller, Matthew W. Morrison, and Michael R. Fisher without leave to amend; and it is further

**RECOMMENDED** that if the Court adopts this Report Recommendation, the Clerk issue a summons and forward it, along with a copy of the complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon Defendant EPA; and it is further

**RECOMMENDED** that a formal response to Plaintiff's complaint be filed by Defendant as provided for in the Federal Rules of Civil Procedure subsequent to service of process on Defendant; and it is further

**RECOMMENDED** that the Clerk schedule a Rule 16 conference before the undersigned if this Report Recommendation is adopted; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk*. Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**\*6 ORDERED** that the Clerk serve a copy of this Order and Report Recommendation and General Order 25 on Plaintiff; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) is DENIED without prejudice; and it is further

**ORDERED** that Plaintiff's motion to appoint the United States Marshal to serve the summons and complaint (Dkt.

No. 10) is **DENIED** as moot in light of this Order and Report Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

*FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.* Roldan v. Racette, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6765360