UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PERRY PENDELL,

                                    Plaintiff,

                                                              1:18-CV-0352
v.                                                            (GTS/TWD)

UNITED STATES SECRET SERVICE,

                                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

PERRY PENDELL, No. 14-A-3835
   Plaintiff, *Pro Se*
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051-0999

HON. GRANT C. JAQUITH                           CATHLEEN B. CLARK, ESQ.
Acting United States Attorney for the N.D.N.Y.  Assistant United States Attorney
   Counsel for Defendant
445 Broadway, Room 218
James T. Foley Courthouse
Albany, NY 12207-2924

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* action pursuant to the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552, *et. seq.*, filed by Perry Pendell ("Plaintiff") against the United

States Secret Service ("Defendant"), is Defendant's motion for summary judgment pursuant to

Fed. R. Civ. P. 56.  For the reasons set forth below, Defendant's motion is granted and Plaintiff's

Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

On March 21, 2018, Plaintiff filed a Complaint against Defendant and Special Agent Kim Campbell. (Dkt. No. 1 [Pl.'s Compl.].)  In that Complaint, Plaintiff asserts three claims: (1) a claim that Defendant violated FOIA by failing to respond to his FOIA request in a reasonable amount of time; (2) a claim that Defendant violated FOIA by failing to respond to his administrative appeal in a timely manner; and (3) a claim that Defendant violated FOIA by improperly withholding agency records.  (*Id.*)

On June 6, 2018, through a Decision and Order, this Court accepted the April 9, 2018, Report-Recommendation of U.S. Magistrate Judge Thérèse Wiley Dancks, which *sua sponte* dismissed with prejudice Plaintiff's claims against Special Agent Campbell.  (Dkt. Nos. 7, 8.)

### B. Undisputed Material Facts on Defendant's Motion for Summary Judgment

1.  In May 2013, Plaintiff was charged in a 27-count indictment with various offenses stemming from his alleged sexual contact with a 14-year-old girl.

2.  Plaintiff was subsequently indicted for criminal solicitation in the second degree.

3.  The criminal solicitation indictment related to evidence that Plaintiff had solicited another inmate to murder his minor victim.[1]

4.  Following a jury trial in Columbia County Court, Plaintiff was convicted of nine

_____

[1]  Plaintiff denies this asserted fact by arguing that the evidence of such solicitation was of questionable truthfulness.  (Dkt. No. 35, Attach. 2, at ¶ 3 [Pl.'s Rule 7.1 Resp.].)  However, whether that charge or his conviction is legally supportable is the subject of neither this lawsuit nor the asserted fact.  Moreover, generally, a court may not render credibility determinations on a motion for summary judgment.  As a result, this asserted fact is deemed admitted.

counts of rape in the second degree, one count of a criminal sexual act in the second degree, four counts of possessing a sexual performance by a child, and one count of criminal solicitation in the second degree.

5.      During the criminal investigation into the child exploitation case against Plaintiff, the Columbia County Sheriff's Office requested assistance from Defendant in conducting forensic examinations of certain electronic devices relating to Plaintiff.

6.      Evidence from various electronic devices were introduced into evidence at Plaintiff's criminal trial, including text messages, photographs, and videos.

7.      On March 21, 2016, Defendant's Albany Resident Office ("ALB") received a handwritten letter from Plaintiff dated March 17, 2016.

8.      Therein, Plaintiff enclosed a letter dated February 25, 2016, that had an attached list of electronic equipment.

9.      In this letter, Plaintiff requested "[a]ny and all extraction reports" performed on a number of electronic devices.

10.     By letter dated April 5, 2016, Defendant acknowledged receipt of Plaintiff's correspondence, but informed him that his request failed to comply with the requirement in FOIA and the Privacy Act that he provide an original notarized signature attesting to his identity or a declaration pursuant to 28 U.S.C. § 1746.

11.     Because Plaintiff did not provide the requested verification by the deadline, his file was administratively closed on May 13, 2016.[2]

---

[2]      Plaintiff denies this asserted fact, citing to a copy of his notarized letter including the requested verification, noting that the letter was notarized on April 27, 2016, before the May 5, 2016, date by which he had to provide it.  (Dkt. No. 35, Attach. 2, at ¶ 11 [Pl.'s Rule 7.1

12.     On May 23, 2016, Defendant received a letter from Plaintiff providing the requested information regarding his identity.

13.     On June 4, 2016, Defendant's FOIA Office responded to Plaintiff's letter.

14.     In that letter, Defendant informed Plaintiff that his previous file number had been administratively closed and a new FOIA file number was being assigned to the request received on May 23, 2016.

15.     Defendant began a search responsive to Plaintiff's request by first examining Defendant's Investigative Case Management ("ICM") system.

16.     From this search, Defendant's FOIA Office was able to confirm that the only case it had involving Plaintiff was an open criminal case in the ALB.

17.     In addition, Defendant's Investigative Support Division ("ISD") is the unit that maintains records of closed criminal investigative files.

18.     Defendant's FOIA Office determined that the two offices that were most likely to maintain records responsive to Plaintiff's FOIA request were the ALB and the ISD.

19.     On June 6, 2016, Defendant's FOIA Office requested that the ALB conduct a search for any records that could be responsive to Plaintiff's FOIA request.

---

Resp.]; Dkt. No. 30, Attach. 3, at 27 [noting that Plaintiff had 30 days from the date of the letter of April 5, 2016, to respond with the requested verified information].)   However, the fact that Plaintiff had this letter notarized on April 27, 2016, does not establish that Defendant ever received this letter before his case was administratively closed; rather, the stamp on this letter states that it was received by Defendant on May 23, 2016.  (Dkt. No. 30, Attach. 3, at 30.)  Nor has Plaintiff pointed to other record evidence establishing receipt of the letter by Defendant at an earlier date; Plaintiff's citation to an instance in which the U.S. Marshal had been unable to serve papers on Defendant on a single instance in 2018 in no way shows that Defendant received the relevant letter before the date of closure or that failure to receive that letter at an earlier date was the fault of Defendant.  This asserted fact is deemed admitted.

20. Secret Service personnel in the ALB reviewed Plaintiff's FOIA request, searched Defendant's electronic database, and concluded that the ALB maintained records that were potentially responsive to the request.

21. The ALB personnel advised Defendant's FOIA Office that they had found potentially responsive records, but that Plaintiff's criminal case was still an open investigation.

22. On July 6, 2016, Defendant's FOIA Office requested that the ISD conduct a search for any records that might be responsive to Plaintiff's FOIA request.

23. On September 10, 2016, ISD informed Defendant's FOIA Office that it did not have any records relating to Plaintiff's FOIA request.

24. By letter dated August 3, 2017, Defendant's FOIA Office notified Plaintiff that his FOIA request was being denied pursuant to 5 U.S.C. § 552(b)(7)(A) ("Exemption 7[A]").

25. In the letter of August 3, 2017, Defendant advised Plaintiff of his right to appeal the denial of his FOIA request.

26. Plaintiff appealed Defendant's FOIA decision by letter dated August 9, 2017.

27. On January 25, 2018, Defendant reiterated its decision denying Plaintiff access to its records under Exemption 7(A).

28. Plaintiff filed his Complaint in this litigation on March 21, 2018.

29. Plaintiff is proceeding *pro se* in this litigation.

30. Plaintiff is not an attorney.

31. Throughout this pending lawsuit, Defendant continued to monitor the ongoing enforcement proceedings relating to Plaintiff's criminal appeal.

32. On August 23, 2018, the New York Supreme Court, Appellate Division, Third

Department rendered its decision on Plaintiff's appeal of his criminal conviction from the Columbia County Court.

33. On August 28, 2018, the ALB closed its criminal investigative case concerning Plaintiff.

34. The ALB then forwarded its 138-page investigative file to Defendant's FOIA Office.[3]

35. Thereafter, Defendant's FOIA Office conducted a review of the file and prepared it for release in accordance with 5 U.S.C. §§ 552 and 552a.

36. On November 1, 2018, Defendant's FOIA Office produced 136 pages of documents to Plaintiff through the United States Postal Service.

37. Defendant withheld two pages of its file because those pages originated with the New York State Police.

---

[3] Plaintiff denies this asserted fact, arguing that the ALB did not send its complete investigative file to the FOIA Office. (Dkt. No. 35, Attach. 2, at ¶ 37 [Pl.'s Rule 7.1 Resp.].) In support of his denial, he cites a 101-page exhibit without any specific citations to information supporting his denial or any explanation as to what specific information he is asserting was left out of the provision. (*Id.*; Dkt. No. 35, Attach. 4.) This non-specific citation is not sufficient to create a dispute of fact. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Each denial shall set forth a specific citation to the record where the factual issue arises."); *Benson v. Otis Elevator Co.*, 10-CV-3246, 2012 WL 4044619, at *1, n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant to be admitted by non-movant where non-movant supported denial "only with non-specific citations to the entire testimony of several witnesses"); *Janneh v. Regal Entm't*, 07-CV-0079, 2009 WL 2922830, at *1, n.3 (N.D.N.Y. Sept. 8, 2009) ("In response . . . Janneh filed a 'Statement of Material Facts Not in Dispute.' . . . The document consists of . . . a phrase at the end of the document stating simply: 'See Attached Exhibits.' Janneh's statement fails to comply with the Local Rules which Janneh has repeatedly been advised about . . . ."); *Univ. Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *2, n.6 (S.D.N.Y. Oct. 17, 2000) ("Despite the clear language of Rule 56 requiring specificity, Plaintiffs rarely offer an exact cite in support of their version of the facts. . . . [A] vague cite to all of the exhibits is simply unacceptable."). This fact is therefore deemed admitted.

38. On November 6, 2018, after consulting with the New York State Police, Defendant's FOIA Officer produced those two pages to Plaintiff.

39. Defendant did not withhold any document in full in its FOIA response, but produced its entire 138-page investigative file.[4]

40. On or about November 7, 2018, Plaintiff objected to the sufficiency of the response to his FOIA request by Defendant's FOIA Office.

41. Therein, Plaintiff made numerous complaints about the sufficiency of Defendant's FOIA response.

42. In his objection of November 7, 2018, Plaintiff claimed the following:

    a. Defendant's statement that "0 pages were withheld in there [sic] entirety" was false;

    b. Defendant failed to include extractions and text message printouts for the following devices:

        i. Samsung SCHU485, 120-2013-CE-000016
        ii. Samsung SCH1405, 120-2013-CE-000007
        iii. iPhone (white), 120-2013-CE-000006
        iv. iPhone 4S (white), 120-2014-CE-00004
        v. Casio G'Zone, 120-2013-CE-000018;

---

[4] Plaintiff denies this asserted fact, requesting that this Court compare Defendant's Exhibit K (the material he states was sent to him) with Plaintiff's Exhibit 5 (a transcript of testimony from his trial). (Dkt. No. 35, Attach. 2, at ¶ 42 [Pl.'s Rule 7.1 Resp.].) However, it is unclear how testimony from Plaintiff's criminal trial (which was conducted years before his FOIA request) has any bearing on showing that Defendant failed to provide 138 pages of its investigative file to Plaintiff in response to his request. Additionally, to the extent that Plaintiff is attempting to argue that Defendant withheld additional documents beyond the 138 pages, Plaintiff has cited no evidence to create a genuine dispute of material fact as to whether Defendant actually possessed further documents like the evidence offered at his trial at the time of the request or its response. This fact is therefore deemed admitted.

c.     Defendant's FOIA response did not include a search warrant for "adultfriendfinder.com," "adultfriendfinder profile," or "stud4u2do";

d.     Defendant's FOIA response did not include the screen shots from the Samsung SCH-U485 cell phone that were used at trial;

e.     Defendant's FOIA response did not include the "cheergirl180" profile from adultfriendfinder.com;

f.     Defendant's FOIA response did not include "text message printouts from the cell phones mentioned above"; and

g.     The Digital Evidence Examination Reports in Defendant's FOIA response differed from the one that Plaintiff's attorney Mark Zuckerman had received for the criminal trial because the reports received for trial had "thumbnail photographs on the right hand side."

43.     Plaintiff also objected to the fact that Defendant redacted the names of various individuals from the records.

44.     Some of the items requested in Plaintiff's objection of November 7, 2018, differed from the material he requested in his original FOIA request.[5]

45.     Defendant redacted information on 28 pages of its 138-page FOIA response to

---

[5]     In particular, it is not clear that some of the specific devices listed in the objection letter were also encompassed by the original FOIA request, although Plaintiff did request in the original FOIA request that Defendant include reports from "all phones, computers and storage devices involved in my case." (Dkt. No. 30, Attach. 3, at 23-25.) Additionally, the original FOIA request does not clearly include a request for things like search warrants or profiles for the relevant internet dating site, as it is not apparent that these items would have been extracted from Plaintiff's devices, and the original FOIA request only sought evidence extracted from the devices that was later sent to the Columbia County Sheriff's Office. (*Id.*)

protect personal information of the minor victim, witnesses, and law enforcement personnel pursuant to 5 U.S.C. §§ 552(b)(6) and 552(b)(7)(C) ("Exemption 6" and "Exemption 7[C]," respectively).[6]

46.     Defendant also redacted information on 22 pages of its 138-page FOIA response to prevent disclosure of information that would reveal law enforcement investigative techniques and procedures pursuant to 5 U.S.C. § 552(b)(7)(E) ("Exemption 7[E]").

### C.     Parties' Briefings on the Pending Motion

#### 1.     Defendant's Memorandum of Law

Generally, in its motion for summary judgment, Defendant asserts four arguments.  (Dkt. No. 30, Attach. 2, at 14-24 [Def.'s Mem. of Law].)  First, Defendant argues that it appropriately withheld documents responsive to Plaintiff's FOIA request during the pendency of his criminal appeal pursuant to Exemption 7(A) because such exemption is designed to apply until a conviction is final, which includes during the pendency of an appeal of that conviction, and the documents requested were part of the investigation that later resulted in Plaintiff's criminal conviction.  (*Id.* at 14-15.)  Defendant argues that the fact that Plaintiff was also convicted of soliciting someone to murder his minor victim in the crime underlying his criminal conviction shows that Defendant's concerns about disclosing this evidence during the pendency of his appeal were valid.  (*Id.*)  Defendant also argues that these records were forwarded to the FOIA

---

[6]     Plaintiff's assertion that redaction was not actually required because he already knew the identities of all of those people is a legal argument that does not dispute the asserted fact that Defendant used the relevant exemptions to justify its redactions.  This asserted fact is therefore deemed admitted, though only as a fact and not as legal conclusion that Defendant's use of the exemptions were undisputedly justified; such legal issues are for the Court to decide based on the evidence.

department and released to Plaintiff once his appeal had concluded and Exemption 7(A) no longer applied.  (*Id.*)

Second, Defendant argues that its search for the documents requested in Plaintiff's FOIA request was reasonable and adequate because Ms. Campbell's declaration shows that the search was conducted in good faith, that Defendant released the entirety of the investigative file discovered to Plaintiff, and that other documents that Plaintiff now argues were not produced are not maintained by Defendant (and thus it cannot produce them).  (*Id.* at 16-18.)

Third, Defendant argues that its response to Plaintiff's FOIA request was proper because redactions made were pursuant to the recognized exemptions for protecting the personal privacy of victims, witnesses and law enforcement personnel, and for protecting records compiled for law enforcement purposes.  (*Id.* at 18-23.)  Defendant argues that the redactions do not obscure any information that is of importance to the public, they address real security concerns for the persons involved, and they protect the techniques and procedures that Defendant uses in its criminal investigations that are not generally known to the public and of which disclosure to the public would reduce the effectiveness of investigations.  (*Id.*)

Fourth, Defendant argues that it has provided all reasonably segregable material to Plaintiff, noting that it searched for the additional documents that Plaintiff asserts are missing from the Defendant's FOIA response, even though those additional documents were not requested in Plaintiff's original FOIA request.  (*Id.* at 23-24.)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff asserts four arguments.  (Dkt. No. 35, at 13-17 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that Defendant is not

entitled to summary judgment based on its withholding of documents during the pendency of his criminal appeal because (a) Exemption 7(A) does not apply past the stage when the information could have interfered with an investigation and Defendant has not shown that there was an ongoing investigation at that time, (b) Defendant did in fact release a portion of the records while the criminal appeal was pending, and (c) this exemption is nonetheless moot because his appeal is no longer pending.  (*Id.* at 13-15.)

Second, Plaintiff argues that Defendant's search for the requested records was neither reasonable nor adequate because the file it released to Plaintiff did not contain all of the evidence the agents described in their testimony at the criminal trial and there are significant redactions in the documents that were provided.  (*Id.* at 15.)  Plaintiff argues that a reasonable search would have started in the ALB because that is where the testing was performed. (*Id.*)

Third, Plaintiff argues that Defendant's response to his FOIA request was improper because it took Defendant 15 months to provide that response, it took Defendant 5 months to decide his administrative appeal, Defendant erred in applying the law enforcement exemption because that exemption does not apply to cases that have concluded, and Ms. Campbell has provided false statements.  (*Id.* at 16.)

Fourth, Plaintiff argues that Defendant has not produced all reasonably segregable material because it has not provided all of the evidence he has asked for, some of which had been produced at his criminal trial.  (*Id.* at 17.)

### 3.     Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant argues that Plaintiff's opposition is ineffective because he has not provided any evidence to rebut Defendant's assertion that it has

provided the entire investigative file it possessed subject to appropriate redactions. (Dkt. No. 36, at 2-4 [Def.'s Reply Mem. of Law].)

## II. LEGAL STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party

has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Finally, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

III.     **ANALYSIS**

A.     **Whether Plaintiff's First and Second Claims Must Be Dismissed**

After careful consideration, the Court answers this question in the affirmative for the following reasons.

Section 552(a)(6)(4) of Title 5 of the United States Code indicates that an agency must (a) (absent exceptional circumstances) make a determination on a request for records within 20 days (excluding Saturdays, Sundays, and legal public holidays) of receipt of that request, and (b) make a determination on any appeal of that determination within 20 days (excluding Saturdays, Sundays, and legal public holidays) of receipt of that appeal.  5 U.S.C. § 552(a)6)(A).  Failure to comply with these time limits is treated as a constructive exhaustion of the requestor's administrative remedies, allowing the requestor to immediately proceed with an action in federal court on claims related to his FOIA request.  *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph [1], [2], or [3] of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions in this paragraph."); *Brennan Cntr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) ("An agency's failure to comply with [the statute's] time limits may be treated as constructive exhaustion of administrative remedies and authorizes the requestor to seek judicial review immediately.").

However, although failure to comply with the FOIA time limits results in a requestor's ability to immediately seek relief on the requestor's underlying FOIA claim (i.e., the unwarranted withholding of requested records) without first exhausting the administrative remedies provided

by FOIA, FOIA does not create a separate legal right to recover damages or any other form of relief solely based on the fact that the agency in question failed to comply with those time limits. *See Carmody & Torrance v. Defense Contract Mgmt. Agency*, 11-CV-1738, 2014 WL 1050908, at *6 (D. Conn. Mar. 13, 2014) (stating that "untimeliness is not a *per se* statutory violation entitling the requestor to any specific remedy"); *Elec. Privacy Info. Cntr. v. Dep't of Justice*, 13-CV-1961, 2014 WL 521544, at *5 (D. D.C. Feb. 11, 2014) ("[N]othing in the FOIA statute establishes that an agency's failure to comply with this 20-day deadline automatically results in the agency's having to produce the requested documents without continued processing.").

Because Plaintiff's First and Second Claims seek relief based solely on Defendant's failure to respond to his request and his appeal within the prescribed time limits, those claims are not recognized under law and must be dismissed. Additionally, it is undisputed that, even if Defendant's responses to either the FOIA request or the administrative appeal were beyond the allowed time limit, Defendant has since responded to both Plaintiff's FOIA request and his administrative appeal, rendering his claims of untimeliness moot. Thus, the only pertinent issue is whether Defendant's response to that FOIA request was adequate under the statute.

### B. Whether Defendant's Response to Plaintiff's FOIA Request Was Adequate Under the Statute

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 30, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 36 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"In order to prevail on a motion for summary judgment in a FOIA case, the defending

agency has the burden of showing that its search was adequate and that any withheld documents

fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d

Cir. 1994) (citing 5 U.S.C. § 552[a][4][B]; *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 79 [1973]).

As to the adequacy of the search, the relevant factual question is "whether the search was

reasonably calculated to discover the requested documents, not whether it actually uncovered

every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999).

"Affidavits or declarations supplying facts indicating that the agency has conducted a thorough

search and giving reasonably detailed explanations why any withheld documents fall within an

exemption are sufficient to sustain the agency's burden," and "[a]ffidavits submitted by an

agency are accorded a presumption of good faith." *Carney*, 19 F.3d at 812. "[A]n agency's

justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009). Once the agency has produced such

affidavits or declarations, the plaintiff must make a showing of bad faith on the part of the agency

or provide some tangible evidence that the exemption claimed by the agency should not apply or

otherwise show that summary judgment is inappropriate. *Carney*, 19 F.3d at 812.

In support of its motion for summary judgment, Defendant provided a lengthy declaration

from Ms. Campbell, who is the Special Agent in Charge of the Liaison Division of the Office of

Intergovernmental and Legislative Affairs for Defendant, and who has been assigned as

Defendant's FOIA/Privacy Act Officer since July 2014. (Dkt. No. 30, Attach. 3, at ¶ 1

[Campbell Decl.].)

As to Defendant's argument that its search for the evidence related to Plaintiff's FOIA

request was reasonable and adequate, Ms. Campbell's declaration states as follows: (a)

Defendant began its search through the ICM search engine, which revealed one open criminal case in the ALB; (b) based on this search and other knowledge, Defendant concluded that the ALB and the ISD would be the most likely place to find responsive materials; (c) on June 6, 2016, Defendant asked the ALB if it had records that would be responsive to Plaintiff's FOIA request, and ALB personnel were familiar with Plaintiff's criminal case, as they had been the office that conducted forensic examinations of his electronic devices; (d) ALB personnel searched the database of the shared drives for that office and located an investigative case file related to Plaintiff's criminal case; (e) on July 6, 2016, Defendant asked the ISD if it had any records that would be responsive to Plaintiff's FOIA request, but the ISD responded on September 10, 2016, that it did not; (f) the ALB provided the 138-page investigative file to Defendant on August 28, 2018, following the judgment on Plaintiff's appeal to the New York Supreme Court, Appellate Division, Third Department related to his criminal conviction; (g) Defendant considered whether Plaintiff was entitled to a disclosure of the Criminal Investigation System of Records, but concluded that this system is exempt from the access provisions of the Privacy Act; (h) Defendant eventually determined that all 138 pages of the ALB investigative file was responsive and released that information to Plaintiff with redactions; (i) after Plaintiff sent an objection to Defendant's response, Defendant conducted an additional search for records mentioned in that objection by recontacting the ALB to ensure that all documents had been produced, but no further documents were found; and (j) the ALB confirmed that it did not possess photographs, thumbnail photographs, screen shots, text messages, profile information, or search warrants, and noted that any photographs extracted from the devices would have been turned over to the Sheriff's Office and were not in the ALB's possession. (Dkt. No. 30, Attach.

3, at ¶¶ 12-20, 26-28, 30-35, 37 [Campbell Decl.].)

Ms. Campbell's declaration meets Defendant's burden to show that the search was sufficiently thorough and reasonably calculated to uncover the requested documents. Plaintiff has provided no admissible evidence to dispute that the search was conducted in good faith or to create a genuine question of fact that Defendant is otherwise hiding additional evidence in its possession. Plaintiff's argument that Defendant must have more evidence including photographs, text messages, and other information discussed in the testimony of two agents at Plaintiff's criminal trial because that evidence was used against him at trial in no way establishes that the cited evidence, even if it still exists, was in Defendant's possession at the time of the request and searches; Defendant is required by FOIA to produce only documents in its possession. *See Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 151 (1980) ("The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created or retained."); *Hadden v. Bureau of Prisons*, 07-CV-8586, 2008 WL 5429823, at *3 (S.D.N.Y. Dec. 22, 2008) ("[T]he agency must actually possess responsive records before it can be found to have withheld them, and, accordingly, 'agency possession or control is prerequisite to triggering any duties under the FOIA.'"). Rather, Ms. Campbell states in her declaration that all evidence in the underlying criminal investigation, including photographs extracted by the ALB, was turned over the Columbia County Sheriff's Office on June 17, 2014, and was no longer in Defendant's possession. (Dkt. No. 30, Attach. 3, at ¶¶ 36-37 [Campbell Decl.]; *see also* Dkt. No. 36, Attach. 1, at ¶¶ 13-15 [Dengler Decl.] [stating that Dengler's office contacted the relevant Secret Service Agent who had testified at Plaintiff's criminal trial, who confirmed that he had removed picture and video evidence from his

computer after returning the originals to the Columbia County Sheriff's Office according to standard procedure, and that Defendant therefore has confirmed that it is not in possession of any further evidence responsive to Plaintiff's FOIA request].)  Nor do Plaintiff's other arguments that Defendant, in his opinion, took too long to find the records despite the available technology and that it would have been reasonable to start at the ALB provide any weight to his assertion or overcome the presumption of good faith.  Plaintiff lastly argues that Ms. Campbell's declaration cannot be relied on because she has "been consistently dishonest, manipulative, and deceptive to this Court," and lied in her declaration.  (Dkt. No. 35, at 15 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff's specific objections to Ms. Campbell's declaration are simply conclusory statements that Defendant has not produced all the evidence that it possesses and has engaged in tactics to deprive him of evidence to which he is entitled under FOIA.  (Dkt. No. 35, Attach. 1.) Plaintiff has not provided any evidence of bad faith related to the search process, or any other evidence to establish that the search was insufficient; as stated above, the fact that not all the requested evidence was found does not render a search inadequate.

As to Defendant's argument that any withheld or redacted material was covered by an applicable exemption, FOIA promotes a policy of disclosure unless the requested documents fall under "one of the specific, enumerated exemptions set forth in the Act."  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005) (internal citation omitted); *see also* 5 U.S.C. § 552(b)(1)-(9).  In keeping with the intent and purpose of broad disclosure, these statutory exemptions are construed narrowly.  *Nat'l Council of La Raza*, 411 F.3d at 355-56.  A federal court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §

552(a)(4)(B).  "The government bears the burden of establishing that any claimed exemption applies."  *Wood v. F.B.I.*, 432 F.3d 78, 85 (2d Cir. 2005); *see also* 5 U.S.C. § 552(a)(4)(B).

### 1.    Exemption 7(A)

Exemption 7(A) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

The Court finds that the question of whether this exemption was properly applied is moot because Defendant eventually produced all of the documents that it had initially withheld while Plaintiff's criminal appeal was pending.  *See Muset v. Ishimaru*, 783 F. Supp. 2d 360, 372 (E.D.N.Y. 2011) (finding FOIA claim moot on receipt of requested documents); *DiModica v. U.S. Dep't of Justice*, 05-CV-2165, 2006 WL 89947, at *3 (S.D.N.Y. Jan. 11, 2006) (ruling that the FOIA claim was rendered moot when defendant produced documents responsive to the FOIA request.  Although Plaintiff still argues that FOIA has been violated based on redactions to the documents as will be discussed below, Exemption 7(A) does not factor into this Court's analysis of whether Defendant violated FOIA for the purposes of this motion.

### 2.    Exemption 6 and Exemption 7(C)

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The determination of whether Exemption 6 applies requires a two-step inquiry: "[f]irst, we must determine whether the personal information is contained in a file similar to a medical or personnel file," and, second, "we balance the public's need for the

information against the individual's privacy interest to determine whether the disclosure . . .

would constitute a 'clearly unwarranted invasion of privacy.'" *Wood*, 432 F.3d at 86 (quoting 5

U.S.C. § 552[b][6]). The Second Circuit has noted that this exemption covers a broad range of

files, including "the government's 'records on an individual which can be identified as applying

to that individual." *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 291 (2d Cir. 2009)

(quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600-02 [1982]). In assessing

the existence of a privacy interest under this exemption, the focus is on what the requested

information reveals, not what it might lead to. *Associated Press*, 554 F.3d at 292.

Exemption 7(C) exempts from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such [documents] . . . could

reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(7)(C). This exemption "applies only if the invasion of privacy that would result from

release of the information outweighs the public interest in disclosure." *Massey v. F.B.I.*, 3 F.3d

620, 624 (2d Cir. 1993). Pursuant to Exemption 7(C), "the public interest sought to be advanced

[must be] a significant one, an interest more specific than having the information for its own

sake," and the information must be likely to advance that interest. *Associated Press*, 554 F.3d at

288 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 [2004]).

The contours of the privacy interest protected by Exemption 6 and Exemption 7(C) are

the same for the purposes of the Court's analysis, although Exemption 7(C) provides a greater

degree of protection of that privacy interest than does Exemption 6 (i.e., Exemption 7[C] requires

a significant public interest to outweigh the privacy right, while Exemption 6 requires a showing

that disclosure would be a clearly unwarranted invasion of the privacy interest). *Associated*

*Press*, 554 F.3d at 284 n.9, 291. "[S]uch privacy interests include 'the individual interest in avoiding disclosure of personal matters' as well as 'the interest in independence in making certain kinds of important decisions,'" and encompasses both "'the individual's control of information concerning his or her person'" and "'keeping personal facts away from the public eye.'" *Associated Press*, 554 F.3d at 284 (quoting *U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 762-63 [1989]). The Second Circuit has noted that "there is little public interest in having the identities of private parties revealed because that information sheds little or no light on the [agency's] performance," and that, similarly, "the public interest in identifying law enforcement personnel is small [if] that information sheds little light on the conduct and administration of [agency] investigations." *Halpern v. F.B.I.*, 181 F.3d 279, 297 (2d Cir. 1999) (finding that disclosure of identities was not warranted because the plaintiff did not allege any specific wrongdoing by the agency that might implicate the need for public disclosure of those identities).

In her declaration, Ms. Campbell states that a number of specific redactions of identifying information (such as the names of the minor victim, names of law enforcement personnel, Special Agent commission book numbers, telephone numbers, and email and street addresses associated with the victim, her family, law enforcement and third-parties) and personal information (such as physical and health information about the victim) are encompassed by Exemptions 6 and 7(C) for the following reasons: (a) Defendant is a criminal law enforcement and security agency and all the materials Plaintiff requested were compiled as part of Defendant's criminal investigation requirements; (b) the privacy rights of the victim and relevant third parties outweighs the public's interest in disclosure because these individuals have a substantial privacy

right, especially given that Plaintiff has been convicted of attempting to solicit the murder of his minor victim, and there is no cognizable public interest in the disclosure of this identifying and personal information; (c) the privacy rights of the law enforcement agents outweighs the public's interest in disclosure because (i) disclosure of this information could interrupt their official duties and prejudice their effectiveness in conducting other investigations, (ii) disclosure could cause unnecessary questioning of them in an unofficial capacity, (iii) disclosure could result in opportunities for retaliation or harassment by Plaintiff or other individuals who have been impacted by those officers' performance of their duties, and (iv) there is no discernable public interest in the disclosure of this information, and public interest would actually be served by withholding disclosure to prevent any diminishment in the ability of law enforcement to perform their duties.  (Dkt. No. 30, Attach. 3, at ¶¶ 40-48 [Campbell Decl.].)

As to the existence of a privacy interest in the information redacted pursuant to these exemptions, the Second Circuit has noted that "[i]t is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA;" "third parties to proceedings [also] have a cognizable privacy interest protected by the FOIA privacy exemptions" extending to personal information such as his or her name or home address.  *Associated Press*, 554 F.3d at 285, 292.  Additionally, "[a]n individual's privacy interest is particularly pronounced where disclosure could lead to embarrassment or retaliation." *Id.* at 286.  Based on both Ms. Campbell's declaration and the evidence, Defendant has established that the redactions made pursuant to these exemptions involve a more than *de minimis* privacy interest.  In particular, release of the redacted information would reveal to the public names and addresses of the minor victim and her family, names,

identification numbers and addresses of law enforcement officers, and highly personal private information about the minor victim,[7] all of which would directly impact the privacy rights of those individuals. As Ms. Campbell states in her declaration, release of this information to the public could result in danger or professional inconvenience to the individuals involved or expose them to embarrassment or retaliation. It makes no difference to the existence of a privacy interest that Plaintiff is already aware of the identity of some of the involved individuals; he is not aware of certain other redacted information and, in any event, the possibility that these documents could be released to people other than Plaintiff merits protection of even information already known to Plaintiff. *See Halpern*, 181 F.3d at 297 ("Confidentiality interests cannot be waived through prior public disclosure or the passage of time."); *accord, Massey*, 3 F.3d at 624.

In response to Defendant's argument that Plaintiff's conviction for solicitation of murder establishes the need to protect the relevant individuals' privacy, Plaintiff has provided evidence in an attempt to argue that his solicitation conviction is just another example of Defendant and others lying and conspiring against him in an illegal manner. (Dkt. No. 35, Attach. 3.) As an initial matter, the Court notes that, to the extent that Plaintiff is attempting to challenge his conviction, this action is not the proper forum for that challenge. Of note, Plaintiff appealed this conviction to the New York State Supreme Court, Appellate Division, Third Department, and that court upheld his conviction, finding it was supported by the weight of the credible evidence.

---

[7] The Court notes that Defendant provided a sealed, unredacted version of the evidence provided to Plaintiff as Defendant's FOIA response, and thus the Court has been able to assess the content of the redacted portions of that response when determining whether the redactions are appropriately covered by the applicable exemptions.

*New York v. Pendell*, 164 A.D.3d 1063, 1065-66, 1068 (N.Y. App. Div. 3rd Dep't 2018).[8]

Additionally, the majority of this evidence consists of Plaintiff's own speculative, unsupported accusations against the Columbia County Sheriff's Office, corrections officers, and the prosecutor, which are not sufficient to raise any genuine dispute of material fact as to whether Defendant had a valid basis for relying on Plaintiff's conviction when applying the relevant exemptions. (*Id.* at 15-21.)  Rather, given that Defendant provided its FOIA response citing these exemptions after Plaintiff's conviction was upheld by the Appellate Division, it was reasonable for Defendant to believe that providing certain identifying information about the victim, her family, and law enforcement involved in his case presented a risk to those individuals based on Plaintiff's past actions.

Plaintiff has not indicated any way in which the public interest is disserved by allowing redaction of the relevant names, identifying information, and addresses of the victim, law enforcement officers, and third parties.  He also has not alleged any way in which disclosure of this specific information would shed light on Defendant's conduct, administration of investigations, or performance of its official duties. *Halpern*, 181 F.3d at 297; *see U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (finding that there was no public interest in redacted identifying information in a document where that identifying information "would not shed any additional light on the Government's conduct of its obligation"); *Associated Press*, 554 F.3d at 285 ("As for the public interest against which the privacy interest is to be weighed, the Supreme

---

[8]    Plaintiff also appealed to the New York Court of Appeals; although it is not clear whether he raised arguments about his solicitation conviction specifically in that appeal, there is no indication that he lacked the opportunity to do so, and there is no question of fact as to whether that conviction is now final. *New York v. Pendell*, 33 N.Y.3d 972, 973 (N.Y. 2019).

Court has made clear that there is only one relevant interest, namely, 'to open agency action to the light of public scrutiny'"). The fact that these individuals were involved in activity and investigations that are of unique interest to Plaintiff for his personal purposes does not alter the need for a sufficiently strong public interest. *See Halpern*, 181 F.3d at 297 ("Nor does Halpern's status as an historian with a unique interest in the redacted material alter this calculus, since 'the identity of the requesting party has no bearing on the merits of his or her FOIA request.'") (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 [1989]); *Associated Press*, 554 F.3d at 285 ("The public interest cannot turn on the purposes for which the request for information is made and the identity of the requesting party has no bearing on the merits of his or her FOIA request.") (internal quotation marks omitted); *Massey*, 3 F.3d at 625 (finding that the possibility that evidence might be useful in helping plaintiff overturn his criminal conviction did not give rise to a public interest). None of the redacted personal and identification information is relevant to exposing actions by Defendant that are of public interest. Plaintiff has not offered any reason that the invasion of the relevant individuals' privacy as to these matters was warranted, much less that there is a significant public interest to outweigh that privacy right. Based on Ms. Campbell's declaration and the unredacted records, the Court concludes that Defendant has met its burden to show that disclosure of this information was clearly unwarranted and that the privacy interests of the private and law enforcement individuals outweigh the minimal-to-non-existent public interest under Exemption 6 and Exemption 7(C). Thus, the evidence redacted pursuant to those exemptions was appropriately withheld from Defendant's FOIA response.

### 3.    Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

In her declaration, Ms. Campbell states that redactions made of information related to investigative techniques and procedures used in the forensic analysis of electronic media are encompassed by Exemption 7(E) because the relevant techniques are not generally known to the public and disclosure of this information has the possibility to enable individuals to circumvent the investigative process, which would adversely impact future criminal investigations and hamper Defendant's efforts to protect the public against criminal activity.  (Dkt. No. 30, Attach. 3, at ¶¶ 49-51 [Campbell Decl.].)  As discussed previously, Ms. Campbell's declaration also states that the relevant evidence was created or obtained as part of Defendant's investigation into Plaintiff's criminal charges; because Plaintiff has offered no evidence to the contrary, this sufficiently establishes that the evidence was compiled for law enforcement purposes as required for the exemption to apply.  (Dkt. No. 30, Attach. 3, at ¶ 43 [Campbell Decl.].)

The Court also concludes that Defendant has shown entitlement to the exemption to protect law enforcement investigation techniques and procedures.  *See Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 380, 388-89 (S.D.N.Y. 2014) (concluding that sworn declarations that revealing the names of law enforcement databases would enable violators to design

27

strategies to circumvent the relevant procedures and compromise investigations and officer safety were sufficient to justify application of Exception 7[E], even where the actual information redacted might not be readily understandable by an average person) (collecting cases). In particular, Ms. Campbell's assertion that disclosure of the techniques and methods by which Defendant is able to extract information from electronic devices would, if made public, allow individuals to devise ways to circumvent that technology and procedures that would undermine the efficacy of criminal investigations is both logical and plausible.

The Court notes, however, that the Second Circuit has found that such justification is not even required to properly apply Exemption 7(E) to a technique or procedure. *See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681-82 (2d Cir. 2010) (holding that the qualifier "if such disclosures could reasonably be expected to risk circumvention of the law" in Exemption 7[E] does not apply to "techniques and procedures," but only to "guidelines"). Ms. Campbell's declaration and the unredacted records are more than sufficient to establish that the redacted portions of the FOIA response were related to techniques or procedures of forensic analysis used to extract data from the relevant electronic devices that are not generally known to the public as required for this exemption.[9] Plaintiff has offered no evidence to show that Defendant acted in bad faith in asserting this exemption or otherwise

---

[9] The Court notes that Plaintiff has not challenged the fact that the relevant redacted information is a technique or procedure rather than a guideline. The Second Circuit, relying on dictionary definitions, noted that a "guideline" is "an indication or outline of a future policy or conduct," while a "technique" is "a technical method of accomplishing a desired aim" and a "procedure" is "a particular way of doing or of going about the accomplishment of something." *Allard*, 626 F.3d at 682. However, as already discussed above, the distinction makes no difference in this case because Defendant has sufficiently established that disclosure of the relevant information could reasonably risk circumvention of the law.

misapplied this exemption.  As a result, the Court finds that the evidence redacted under

Exemption 7(E) was appropriately withheld from Defendant's FOIA response.

For all of the above reasons, the Court grants Defendant's motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 30) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: December 16, 2019
   Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge